**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------**X**

ELIJAH HOLLMAN,

               Plaintiff,                              **REPORT AND RECOMMENDATION**

    -against-                                08-CV-1417 (NGG) (ALC)

LIEUTENANT KRISTIE BARTLETT and
LIEUTENANT BRIAN GUIMOND, [1]

               Defendants.

-------------------------------------------------------------------**X**

**CARTER, UNITED STATES MAGISTRATE JUDGE:**

      **I.**       **Background**

          **A.  Procedural History**

      Plaintiff Elijah Hollman initially commenced this action on April 4, 2008 as a *pro se* party

while incarcerated at the Federal Correctional Institution in Elkton, Ohio.  He asserted two

claims pursuant to *Bivens v. Six Unknown Agent of the Federal Bureau of Narcotics*, 403 U.S. 388

(1971).  *See Hollman v. Lindsay*, No. 08-CV-1417, 2009 WL 3112076, at *1 (E.D.N.Y. Sept. 25,

2009).  Plaintiff's first cause of action alleged that while he was previously incarcerated at the

Metropolitan Detention Center ("MDC"), MDC officials Warden Cameron Lindsay, Kevin Page,

Nicole Waller, Dr. Parry Hess, and Jessie Anderson violated Plaintiff's constitutional right to

drug rehabilitation by denying him access to the Residential Drug Abuse Program ("RDAP").  *See*

*id*.  Plaintiff's second cause of action alleged that MDC officials Lieutenants Bartlett and

---

[1] Defendants MDC officials Warden Cameron Lindsay, Kevin Page, Nicole Waller, Dr. Parry Hess, and Jessie Anderson were dismissed in the Court's September 25, 2009 order.  (Docket entry no. 34.)  Defendant MDC is listed on the docket sheet as a defendant and was served with the complaint, (*see* docket entry no. 9) but was omitted in the Court's order and from subsequent filings.  The docket sheet and related filings do not explain the omission.  Further, Plaintiff's proposed amended complaint does not seek to allege any claims against the MDC nor does he seem to be continuing his prosecution against the MDC.

Guimond violated Plaintiff's constitutional due process rights by placing him in the MDC's special housing unit (the "SHU") on September 6, 2007 for a week and, again, on October 25, 2007, and that they colluded to deprive Plaintiff of his right to rehabilitation. *See id.* at *1, 5, 10. On September 8, 2008, Defendants moved to dismiss the claims or, in the alternative, for summary judgment. On September 25, 2009, the Court dismissed the first claim against Defendants Lindsay, Page, Waller, Hess, and Anderson for failing to state a claim upon which relief can be granted. *See id.* at *9. The Court found that Plaintiff did not have a constitutional right to participate in the RDAP and that he had no protected liberty interest in the RDAP's one-year sentence reduction. *See id*. The Court also dismissed all claims insofar as they were alleged against Defendants in their official capacity. *See id*. at *8. Plaintiff's second cause of action – that Defendants Bartlett and Guimond, in their individual capacities, violated Plaintiff's constitutional right to due process by placing him in the SHU at the MDC in September and, again, in October 2007 – survived summary judgment in part because the Court found insufficient evidence in the record to dismiss the claim on summary judgment grounds. *Id*. at *14, 16. The Court ordered "limited discovery on the issues of whether the PLRA's exhaustion requirement bars Hollman's claims and whether Defendants Bartlett and Guimond are entitled to qualified immunity." *Id.* at *16.

Plaintiff is no longer incarcerated and obtained counsel shortly after the Court rendered its decision. On July 10, 2010, Plaintiff's counsel filed her notice of appearance. During a telephonic conference on August 13, 2010, Plaintiff notified the Court and Defendants about his intention to amend the complaint. Defendants said that they would oppose the amendment. By order dated October 24, 2010, the Honorable Nicholas G. Garaufis, United States District

Judge, referred to me Plaintiff's motion to amend the complaint. On February 9, 2011, I held oral arguments. For the reasons set forth below, I respectfully recommend that the Court deny Plaintiff's motion to amend his complaint.

**B. Proposed Amended Complaint**

Plaintiff seeks to add the United States of America and MDC's Special Investigative Services ("SIS") Investigator S. Rivera as Defendants. The proposed amended complaint alleges that Plaintiff filed the necessary paperwork and made substantial efforts to be admitted into the RDAP because the Honorable Thomas C. Platt recommended the program. (P. Am. Compl. ¶¶ 8-17.) On September 6, 2007, staff members mentioned that they felt "pressured" by Plaintiff's persistence with the program. (*Id*. ¶ 19.) Those staff members allegedly "colluded" with Defendant Bartlett to place Plaintiff in administrative segregation pending a SIS investigation without reason. (*Id*. ¶ 20.) Plaintiff was released a week later, and he continued his efforts to participate in the RDAP. (*Id*. ¶ 21.) On October 25, 2007, an unnamed prisoner in a work cadre, other than the one to which Plaintiff was assigned, falsely accused Plaintiff of threatening him. (*Id*. ¶ 22.) In response, Defendant Guimond housed Plaintiff in the SHU pending an investigation of the allegations. (*Id*. ¶ 23.) S. Rivera was assigned to investigate the complaining inmate's allegations, that Plaintiff had threatened the inmate and "[threw] a punch" at the inmate. (*Id*. ¶ 24.) Rivera issued a report on November 15, 2007 ("November 15 report"). (*Id*. ¶ 25.) Plaintiff alleges that the November 15 report exonerated him because it admitted that a review of the tape recordings from the prison's camera system failed to reveal events corroborating the inmate's allegations and that no other inmates were willing to cooperate in the investigation. (*Id*.) Despite the exoneration, Rivera determined that Plaintiff

should remain in the SHU, while the complaining inmate, who allegedly fabricated the story, was never placed in the SHU.  (*Id*. ¶ 26.)  Plaintiff remained in the SHU for approximately two and one-half months after the issuance of the November 15 report before he was transferred to the Federal Correctional Institution at Elkton, Ohio ("FCI Elkton").  (*Id*. ¶ 27.)  He argues that FCI Elkton is a correctional institution with a higher security level than which Plaintiff had been designated and it housed inmates that were more dangerous than Plaintiff.  (*Id*. ¶ 28.)  While he was at the FCI Elkton, Plaintiff was informed that he was now classified as a low-security inmate with "in" custody, in part, because Rivera placed in Plaintiff's file that a SIS investigation revealed that Plaintiff threatened another inmate.  (*Id*. ¶¶ 31-33.)  Because of this change in classification, he was denied furlough to participate in otherwise permissible activities.  (*Id*. ¶ 30.)

The first proposed cause of action is similar to the surviving claim from the original complaint.  It alleges that Defendants Bartlett and Guimond, in their individual and official capacities, both committed intentional torts by placing Plaintiff in the "hole" and depriving him of his right to be free from such restraint.  (*Id*. ¶¶ 6, 35.)  Plaintiff claims in his proposed second cause of action that Rivera, as an individual and in his capacity as an employee of the United States America, deprived Plaintiff of his right to be free from restraint.  (*Id*. ¶¶ 6, 36-37.)  His third proposed third cause of action claims that S. Rivera, as an individual and in his capacity as an employee of the United States America, violated Plaintiff's due process rights.  (*Id*. ¶¶ 38-39.)  In his proposed fourth cause of action, Plaintiff alleges that Rivera, as an individual and in his capacity as an employee of the United States America, violated Plaintiff's Eighth

Amendment rights.  (*Id.* ¶¶ 40-41.)  He seeks monetary relief for the violations committed against him.

Defendants oppose the amendments to the complaint, arguing that (1) the Court lacks subject matter jurisdiction over Plaintiff's proposed Federal Torts Claims Act claims against the United States and Rivera; (2) sovereign immunity bars Plaintiff's proposed *Bivens* claims insofar as they are asserted against Rivera in his official capacity; (3) sovereign immunity bars Plaintiff's proposed *Bivens* claims insofar as they are asserted against the United States; (4) Plaintiff's proposed *Bivens* claims against Rivera in his individual capacity are futile because they fail to state a claim; and (5) if Plaintiff is permitted to proceed with his *Bivens* claims, Rivera is protected by qualified immunity.

## II.  Standard of Review

Fed. R. Civ. P. 15(a)(2) provides that leave to amend a complaint shall be freely given by the court.  However, amendment of a complaint is not an absolute right.  A trial court has discretion "whether or not to grant leave to amend, and its discretion is not subject to review on appeal except for abuse of discretion."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) (internal citations and quotation marks omitted).  Among other reasons, courts will deny a motion for leave to amend the complaint if they find the amendment is futile. *See Patane v. Clark*, 508 F.3d 106, 113 n. 6 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962)); *Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996) ("Where it appears that granting leave to amend is unlikely to be productive, it is not an abuse of discretion to deny leave to amend.").  An amendment is considered futile if, for example, it could not defeat a motion to dismiss for lack of subject matter jurisdiction.  *See Smith v.*

*Everson*, No. 06-CV-0791, 2008 WL 818512, at *4 (E.D.N.Y. Mar. 21, 2008); *Latino Quimica-Amtex S.A. v. Akzo Nobel Chemicals B.V.*, No. 03-CV-10312, 2005 WL 2207017, at *13 (S.D.N.Y. Sept. 8, 2005); *Chan v. Reno*, 916 F. Supp. 1289, 1302 (S.D.N.Y. 1996).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002); *Malik v. Meissn er*, 82 F.3d 560, 562 (2d Cir. 1996).  The court may consider affidavits and other materials outside of the pleadings that support or oppose subject matter jurisdiction.  *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

Amending a complaint is also futile if the proposed amended complaint cannot survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  *See Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  When a court considers whether an amendment is futile, it uses "the same standard as those governing the adequacy of a filed pleading."  *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991).  When considering a Rule 12(b)(6) motion, the court accepts the truth of the complaint's allegations and draws all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994).  It should dismiss a complaint if it fails to contain sufficient allegations of fact to state a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  The court, however, should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level."  *Id.* at 555.

### III. Proposed Federal Torts Claims Act Claims Against Defendants Guimond and Bartlett, and S. Rivera and the United States of America

#### A. Proposed FTCA Claim against S. Rivera

In his proposed second cause of action, Plaintiff purports to allege a violation of the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et seq*. ("FTCA") against Rivera because Rivera continued to keep Plaintiff in the SHU though the November 15 report exonerated him. (Pl. Am. Compl. ¶¶ 6, 36-37.) His FTCA claim against Rivera is unavailing. "Government employees enjoy absolute immunity against common law tort claims, and the only proper federal institutional defendant is the United States." *Marsden v. Fed. Bureau of Prisons*, 856 F.Supp. 832, 836 (S.D.N.Y. 1994) (citing, *inter alia*, *United States v. Smith*, 499 U.S. 160, 161-65, 111 S. Ct. 1180, 113 L.Ed.2d 134 (1991)); s*ee also* 28 U.S.C. § 2679(b)(1) (providing that suit against the United States under the FTCA is the exclusive damages remedy for common law torts committed by a federal employee acting within the scope of his employment); *see also Harrison v. Lutheran Medical Center*, No. 05-CV-2059, 2010 WL 3924292, at *3 n. 7 (E.D.N.Y. Mar. 23, 2010). A federal employee asserting absolute immunity must establish that during the alleged act, he "was acting within the scope of his office or employment ...." 28 U.S.C. § 2679(d)(1); *see also Smith*, 499 U.S. at 161. The Government certifies under 28 U.S.C. § 2679(d)(1) and 29 C.F.R. § 15.4 that during the incident, Rivera was acting within the scope of this employment. (Def. Mot. 13.) Plaintiff does not take issue with the certification. Accordingly, I respectfully conclude that because the proper defendant for Plaintiff's allegations is the United States of America, the Court lacks subject matter jurisdiction over Rivera over the FTCA claim.

### B. Proposed FTCA Claim against Defendants Guimond and Bartlett

In Plaintiff's proposed first cause of action, he alleges that Defendants Guimond and Bartlett committed an intentional tort by placing Plaintiff in the "hole" and depriving him of his right to be free of restraint. (Pl. Am. Compl. ¶ 35.) Defendants assumes that this claim is the surviving *Bivens* claim from the original complaint, (Def. Mot. 5, 11-12), but I disagree with the assumption. I view the claim as a new FTCA claim. Plaintiff's motion papers are silent about the surviving *Bivens* claim.

The Court originally construed the intentional tort claim against Guimond and Bartlett as a constitutional tort because Plaintiff brought the complaint pursuant to *Bivens*. *See Hollman*, 2009 WL 3112076, at *10 ("Because Hollman states in his Complaint that this court has subject matter jurisdiction under *Bivens*, this court construes his 'intentional tort' claim as a constitutional tort cognizable under *Bivens*, rather than a state law tort."). Here, the proposed amended complaint, which was drafted by counsel, does not claim that the Court has subject matter jurisdiction pursuant to *Bivens*, but rather, pursuant to the FTCA. (P. Am. Comp. ¶ 6.) Moreover, Plaintiff does not make any constitutional claims against Guimond and Bartlett. Plaintiff is aware that the first complaint was brought under *Bivens*. (Pl. Mem. 9.) He does not incorporate all the allegations from the first complaint in his first cause of action against Defendants Guimond and Bartlett, but he does incorporate the original complaint's factual allegations in his third and fourth causes of actions against S. Rivera. (Compare P. Am. Compl. ¶ 35 with ¶¶ 38, 40.) Thus, from a plain reading of the proposed amended complaint and from Plaintiff's motion papers, it appears that Plaintiff is no longer pursuing the surviving *Bivens* claim against Defendants Guimond and Bartlett, but is alleging a new FTCA claim against them.

This proposed FTCA claim is futile for the same reason the proposed second cause of action is futile against Rivera.  *See e.g.*, *B&A Marine Co. v. Am. Foreign Shipping Co*., 23 F. 3d 709, 715 (2d Cir. 1994) (28 U.S.C. § 2679(d)(1) allows the Court to certify that Defendants were acting within the scope of their employment); *but see id.* at 717 (Glasser, J., concurring) ("Insofar as [the majority] suggests that the statute authorizes the court to certify *sua sponte*, I finding nothing in § 2679(d)(3) which supports it.").  The United States of America is the proper defendant in this FTCA claim.

### C.  Proposed FTCA claim against the United States of America

Plaintiff alleges a FTCA claim against the United States under the doctrine of respondeat superior.  (Pl. Am. Compl. ¶ 5.)  This amendment should be denied as futile because the Court lacks subject matter to hear the claim.  In general, the FTCA permits plaintiffs to sue for damages against the United States and waives its sovereign immunity for "claims against the United States, for money damages ... for ... loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).  In order to pursue a FTCA claim against the United States, "a plaintiff must first file an administrative claim with the appropriate federal agency before suing for relief in federal court."  *Adeleke v. U.S*., 355 F.3d 144, 153 (2d Cir. 2004) (citing 28 U.S.C. § 2675(a); *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998)).  This requirement is jurisdictional and "applies equally to litigants with counsel and to those proceeding *pro se*."  *Adeleke*, 355 F.3d at 153 (citing *McNeil v. United States*, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L.Ed.2d 21 (1993)); *accord Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (repeating that the jurisdictional

requirement cannot be waived) (citations omitted). "The administrative exhaustion requirement derives from a cardinal principle of law - that the United States, as sovereign, is immune from suits in the courts of law." *Mosseri v. F.D.I.C.*, Nos. 95-CV-723, 97-CV-969, 1999 WL 694289, at *7 (S.D.N.Y. Sept. 8, 1999). Failing to comply with this jurisdictional requirement will result in dismissal of a plaintiff's suit. *See McNeil*, 508 U.S. at 113.

Further, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b). A FTCA claim ordinarily accrues at the time of injury. *See Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998). Courts lack subject matter jurisdiction over a plaintiff's FTCA claim if it fails to bring suit within the appropriate period. *See United States v. Kubrick*, 444 U.S. 111, 117-18, 100 S. Ct. 352, 62 L.Ed.2d 259 (1979) (the statute of limitations provided in § 2401(b) is strictly construed because the FTCA "waives the immunity of the United States"). The burden is on the plaintiff to plead and prove compliance with § 2401(b). *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)(citations omitted). "In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim." *Id.* (citing *Wyler v. United States*, 725 F.2d 156, 159 (2d Cir. 1983)).

The record is clear here and Plaintiff has conceded, that he has not filed an administrative claim with any federal agency for his federal tort claims. Moreover, the two-year statute of limitations period has expired. Plaintiff maintains, however, that the action should not be time-barred and that his failure to file an administrative claim is not fatal. He submits that he should still be permitted to file the claim because the limitations period should

be equitably tolled and the Court should retroactively stay the action, presumably from the date of injury until the date he was released from prison.[2]

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L.Ed.2d 669 (2005). The Second Circuit has recognized that equitable tolling could apply to FTCA claims under certain limited circumstances. *See e.g.*, *Valdez v. United States*, 518 F.3d 173, 182-83 (2d Cir. 2008); *Genao v. U.S.*, No. 08-CV-878, 2010 WL 3328017, at *4 n. 4 (E.D.N.Y. Aug. 19, 2010). In FTCA matters, courts apply "the doctrine of equitable tolling in 'rare and exceptional circumstances,' where [there exists] 'extraordinary circumstances' [that prevented] 'a party from timely performing a required act and that party acted with reasonable diligence throughout the period he [sought] to toll.'" *Czernicki v. U.S. Dep't of Justice*, 137 F. App'x 409, 410 (2d Cir. 2005) (summary order cited in accordance with Fed. R. App. Proc. 32.1) (quoting *Doe v. Menefee*, 391 F.3d 147, 159-60 (2d Cir. 2004)) (affirming district judge's decision to deny equitable tolling for prisoner's failure to file an administrative claim under the FTCA). The doctrine may be applied when the statute of limitations has passed but "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or [] the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Czernicki*, 137 F. App'x at 410-11 (quoting *Irwin v. Dep't of Veterans Affairs*, 489 U.S. 89, 96, 111 S. Ct. 453, 112 L.Ed.2d 435 (1990).

---

[2] In Plaintiff's motion papers, he urged the Court to apply the analysis set forth in *Hammon-Knowlton v. United States*, 121 F.2d 192 (2d Cir. 1941). However, during oral arguments, Plaintiff conceded that the case is inapplicable. I agree with the concession.

Plaintiff asks that the Court equitably toll the limitations period because he was incarcerated during the applicable limitations period and therefore, was suffering from a legal disability. Plaintiff argues that because he commenced the action *pro se*, he could not have known that there were additional procedures with which he needed to comply. He submits that while he was incarcerated, he was unaware of the 28 U.S.C. § 2401(b) requirements and that no one informed him about the proper procedures. Plaintiff maintains that he has actively pursued his claims and that the Court should grant him a stay in order to exhaust his administrative remedies.

Plaintiff's reasons are insufficient to toll the statute of limitations. Plaintiff has not filed a defective pleading in this suit that caused him to miss the governing statute of limitations nor has he alleged that Defendants in some way conspired to deprive him of the facts that comprise his claim. If I were to accept Plaintiff's explanation that he was suffering from a legal disability, nearly every inmate would be excused from complying with the statute until the inmate was released from prison. Many *pro se* inmates have trouble complying with the law, but they are still, required to follow the administrative procedures. *See e.g.*, *Czernicki*, 137 F. App'x at 410 (affirming lower court's decision dismissing FTCA claim though inmate cited his inability to speak English and to understand the legal procedures, and his mental health deficiencies as reasons to toll the limitations period); *Toomer v. County of Nassau*, No. 07-CV-01495, 2009 WL 1269946, at *12 n. 14 (E.D.N.Y. May 5, 2009) (failing to find a basis to equitably toll the inmate's time to file an administrative claim); *Calabro v. Drug Enforcement Admin.*, 88-CV-5082, 1990 WL 16103, at *2 (S.D.N.Y. Feb. 14, 1990) (reasoning "that [plaintiff] allegedly was not cognizant of the legal extent of his claim until he consulted with a lawyer … does not excuse his untimely

filing of the claim); *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 355 (D.N.J. 2003) ("Neither lack of legal knowledge nor attorney error constitute extraordinary circumstances required for equitable tolling." (quotation marks and citation omitted)).  Moreover, nothing in 28 U.S.C. § 2401(b) allows Plaintiff to toll the limitations period because he was under a legal disability. *Compare* 28 U.S.C. § 2401(a).

Plaintiff's claim that he lacked access to information about filing FTCA claims is unavailing.  As Defendants submit, there are law libraries in the MDC and Plaintiff does not argue that he requested access and prison officials impeded his access.  He simply alleges that he did not know about the FTCA requirements because he was incarcerated, but had he known, he would have complied.  It is understandable that incarceration makes it more difficult for plaintiffs to learn about administrative procedures, but this difficulty is insufficient for a court to equitably toll the governing statute of limitations.  *See e.g.*, *Dockery v. Tucker*, No. 97-CV-3584, 2006 WL 5893295, at *7 n. 16 (E.D.N.Y. Sep. 6, 2006) (finding plaintiff's allegation that the FBI agent left inadequate instructions regarding administrative claims insufficient for equitable tolling); *Van Eck v. Cimahosky*, 329 F. Supp. 2d 265, 269 (D. Conn. 2004) ("Plaintiff's allegation of improper notice does not justify tolling the … limitations period applicable to the Plaintiff's FTCA claim."); *Bowman v. U.S. Postal Serv.*, No. 02-CV-6138, 2003 WL 1395821 (S.D.N.Y. Mar. 20, 2003).

IV. **Proposed Bivens Claims**

A. **Proposed *Bivens* Claims against S. Rivera and Defendants Bartlett and Guimond in their Official Capacities and the United States of America**

A party bringing a *Bivens* claim must show "that a defendant acted under color of federal law to deprive plaintiff of a constitutional right."  *Tavarez v. Reno*, 54 F.3d 109, 110 (2d

Cir. 1995). "Under [*Bivens*], a plaintiff injured by a federal employee's violation of the plaintiff's constitutional rights is entitled to recover money damages when there is neither a special factor [counseling] hesitation nor an equally effective alternative remedy." *Adeyi v. U.S.*, No. 06-CV-3842, 2010 WL 520544, at *5 (E.D.N.Y. Feb. 8, 2010) (citing *Bivens*, 403 U.S. at 396-97). A party may bring the claim against federal officials sued in their individual capacity, but it cannot bring a *Bivens* claim against federal officials in their official capacity. *See id.*; *Perez v. Hawk*, 302 F. Supp. 2d 9, 18 (E.D.N.Y. 2004) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 484 (2004)) (additional citation omitted).

Plaintiff seeks to assert *Bivens* claims in his proposed third and fourth causes of action against S. Rivera in both his official and individual capacity. As this Court has already held, sovereign immunity bars *Bivens* claims brought against a federal employee in his official capacity. *Hollman*, 2009 WL 3112076, at *8; *see also Adeyi*, 2010 WL 520544, at *5 ("The Supreme Court has declined to imply a *Bivens* action against federal agencies or federal agents acting in their official capacities." (citing *FDIC*, 510 U.S. at 484-86)). I do not interpret the proposed first cause of action against Guimond and Bartlett to be a *Bivens* claim, *see supra* at 7-9 (reasoning that the claim is styled as a FTCA claim), but should the Court disagree, it has already dismissed the claim against Defendants in their official capacities, but permitted Plaintiff to move forward with the claim insofar as it is alleged against them in their individual capacities. *Hollman*, 2009 WL 3112076, at *8, 13-14.

The proposed amended complaint does not assert a cause of action specifically against the United States of America, but it does allege that the United States is responsible for the acts of all defendants under respondeat superior. (P. Am. Compl. ¶ 5.) To the extent that Plaintiff

alleges respondeat superior liability as to the United States for his *Bivens* claims, those claims are futile because this theory does not extend to *Bivens* claims. *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) ("[A] plaintiff must allege that the individual defendant was personally involved in the constitutional violation") (citing *Ellis v. Blum*, 643 F.2d 68, 85 (2d Cir. 1981)); *Adeyi*, 2010 WL 520544, at *8; *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 439 (E.D.N.Y. 2006). Accordingly, I respectfully recommend that the Court deny Plaintiff's motion insofar as he seeks to assert *Bivens* claims against S. Rivera, Defendants Bartlett and Guimond in their official capacities, and the United States of America.

**B. Plaintiff's Proposed Due Process Claims against S. Rivera in his Individual Capacity**

Plaintiff argues violations of his due process rights in his proposed third cause of action against S. Rivera. The Court previously allowed Plaintiff to proceed with his due process claims against Defendants Guimond and Bartlett. *Hollman*, 2009 WL 3112076, at *14. The allegations in the original complaint relating to due process violations differ from the proposed amended complaint in several respects. First, the Court treated Defendants' motion as one for summary judgment. Here, before the Court is simply a motion to amend, and I am mindful of the liberal allowance of Fed. R. Civ. P. 15(a) and the pleading standard set forth in Fed. R. Civ. P. 12(b)(6). Defendants submit various declarations in support of their motion, but I confine myself to the pleadings. Second, the allegations against Guimond and Bartlett in support of a due process violation are broader than the allegations against S. Rivera. They relate to two aggregated dates of confinement in the SHU of 97 days, as well as some purported retaliation claims. Here, the only issue is the second confinement period of 75 days, as well as the placement of a false report in Plaintiff's file. Third, Plaintiff asserted in his opposition papers that he was not

afforded any hearings or reasons justifying confinement in the SHU.  *Hollman*, 2009 WL

3112076, at *12.  He does not make similar allegations against Rivera.  Finally, a *pro se* litigant

drafted the original complaint, whereas experienced counsel drafted the proposed amended

complaint.

In order to assert a procedural due process claim, "a prisoner must make two showings:

(1) that he enjoyed a protected liberty interest, and (2) that deprivation of that interest

occurred without due process of law."  *Alvarado v. Kerrigan*, 152 F. Supp. 2d 350, 354 (S.D.N.Y.

2001) (citing *Taylor v. Rodriguez*, 238 F.3d 188, 191 (2d Cir. 2001)).  Plaintiff claims that Rivera

deprived his liberty interests by (1) detaining him in the SHU from November 15, 2007 until his

transfer to the MDC on January 30, 2008 though the November 15 report exonerated him; and

(2) and by placing in his file that a SIS investigation revealed that Plaintiff threatened another

inmate, which resulted in Plaintiff's transfer to a FCI Elkton, a purported higher security prison

than the MDC and elevated Plaintiff's custody classification that cost Plaintiff a furlough.  (P.

Am. Compl. ¶¶ 26-28, 30-32.)

   **i.      Segregation in the SHU from November 15, 2007 – January 30, 2008**

In order for a prisoner to show that his administrative confinement implicated a

protected liberty interest, he must satisfy the standard articulated in *Sandin v. Conner*, 515 U.S.

472, 483–84 (1995).  He must establish that his confinement was "atypical and significant and

the state has created the liberty interest by statute or regulation."  *Tellier v. Fields*, 280 F.3d 69,

80 (2d Cir. 2000) (citation and quotation marks omitted); *accord Sandin*, 515 U.S. at 484.  "A

disciplinary sanction does not meet the *Sandin* 'atypical and significant hardship' standard

unless it is 'onerous.'"  *Alvarado*, 152 F. Supp. 2d at 354 (quoting *Jenkins v. Haubert*, 179 F.3d

19, 28 (2d Cir. 1999)). An inmate generally does not establish "atypical and significant hardship" based on a confinement whose duration lasts less than 101 days, absent a showing that the conditions of his confinement were abnormal or unusual. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 370 (E.D.N.Y. 2005) (collecting cases); *Thompson v. United States*, No. 09-CV-0964, 2010 WL 1910293, at *5-6 (W.D.N.Y. May 7, 2010) (collecting cases); *Alvarado*, 152 F. Supp. 2d at 354 (collecting cases).

Here, Plaintiff's confinement in the SHU after the release of the November 15 report was only 75 days, but the analysis does not end simply because of the number of days spent in the SHU. Indeed, "under abnormal or unusual SHU conditions, periods of confinement of less than 101 days may implicate a liberty interest." *Ortiz*, 380 F.3d at 654 (citing *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004)). Courts consider various factors such as "'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (quoting *Palmer*, 364 F.3d at 64). "Only when the conditions are uncontested may a district court resolve the issue of atypicality of confinement as a matter of law." *Davis*, 576 F.3d at 133 (citing *Palmer*, 364 F.3d at 65). Conditions typical of segregated confinement include "solitary confinement for 23 hours a day, one hour of exercise in the prison yard per day, and two showers per week." *Ortiz*, 380 F.3d at 655 (citing *Palmer*, 364 F.3d at 65 n. 3).

The gravamen of Plaintiff's complaint is that though the November 15 exonerated him, he continued to be placed in the SHU for an extra 75 days without cause. He disputes the duration of the segregation in the SHU, but does not make a single allegation in his proposed

amended complaint, or in his motion papers, that the conditions of his confinement during that period were atypical or unusual. Defendants maintain in their papers that Plaintiff cannot show atypical conditions of his confinement. (Def. Mot. 21.) Plaintiff does not contest this argument but continues to focus on the duration. Thus, as the proposed amended complaint stands, Plaintiff has not met the basic pleading requirement that he has a protected liberty interest in his confinement. *See Anderson v. Marr*, No. 10-CV-818, 2011 WL 3423694, at *9 (S.D.N.Y. Jul. 18, 2011) (recommending dismissal of the procedural due process claim because the plaintiff's "submissions make no mention of the conditions of the administrative segregation … relative to ordinary prison conditions" (quotation marks omitted)); *Torres v. Logan*, No. 10-CV-6951, 2011 WL 1811003, at *4 (S.D.N.Y. May 11, 2011) (recommending that the Court grant Defendants' 12(b)(6) motion because in part because the plaintiff failed to "allege any facts regarding the conditions of his confinement, including whether they were abnormal or unusual [and] without such assertions, allegations regarding confinement for such a period of time alone do not describe an atypical or significant hardship implicating a liberty interest."); *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 607 (S.D.N.Y. 2009) (granting dismissal of due process claim because of the lack of factual allegations about the conditions of the plaintiff's 280 days in the SHU); *Shuler v. Brown*, No. 07-CV-0937, 2009 WL 790973, at *8-9 (N.D.N.Y. Mar. 23, 2009) (dismissing procedural due process claim for failing to state a claim of a prisoner that served less than 101 days in the SHU, but noting the conflict among district court about whether allegations regarding conditions of confinement are necessary to withstand a motion to dismiss); *Sales v. Barizone*, No. 03-CV- 6691, 2004 WL 2781752, at *7 (S.D.N.Y. Dec. 2, 2004) (Inmate's "due process claim arising out of two months' confinement in the SHU, however, cannot survive the

*Sandin* test absent further allegations."); *Mack v. Artuz*, No. 01-CV-11832, 2002 WL 31845087, at *7 (S.D.N.Y. Dec. 19, 2002) (recommending dismissal of due process claim because prisoner failed to allege how his confinement differed from normal confinement); *Tookes v. Artuz*, No. 00-CV-4969, 2002 WL 484391, at *3 (S.D.N.Y. Jul. 11, 2002) (granting 12(b)(6) motion in part because notwithstanding the plaintiff's 96 days of confinement in the SHU, "the complaint is devoid of any allegations regarding the circumstances of plaintiff's confinement."); *Alvarado*, 152 F. Supp. 2d at 355 (granting motion to dismiss the procedural due process claim in part because the plaintiff did not allege "conditions that elevate his confinement to the level of deprivation required under *Sandin.*").

Because counsel drafted this proposed amended complaint, Plaintiff loses the leniency that the Court previously afforded him as a *pro se* litigant. Plaintiff assumes that the Court knows that the conditions to which he was exposed in the SHU are different from those conditions to which he would have been exposed had he been released after the November 15 report was issued. The Court's familiarity of the SHU does not eliminate Plaintiff's obligation to meet his basic pleading requirements. Accordingly, I respectfully recommend that Plaintiff's proposed third cause of action be denied as futile for failing to state a cognizable liberty interest.

Should the Court reject my recommendation that Plaintiff has not shown atypical or unusual conditions of his confinement, I will move to the second part of the *Sandin* analysis to determine if Plaintiff has a protected liberty interest in his confinement, i.e., "whether the state has created a liberty interest by statute or regulation." *Tellier*, 280 F.3d at 80. The Second Circuit has held that 28 C.F.R. § 541.22(c) of the Code of Federal Regulations governing

administrative detention for the Federal Bureau of Prisons created a constitutionally protected liberty interest in not being confined. *See Tellier*, 280 F.3d at 81. "Subsection (c) require[d], *inter alia*, that prison staff provide inmates in administrative segregation a formal hearing, should they be confined for more than seven continuous days; they also provide that an inmate be released from segregation when the reasons for the placement in segregation cease to exist." *Hollman*, 2009 WL 3112076, at *13 (citing 28 C.F.R. § 541.22(c) (effective Sept. 10, 1996 – June 19, 2011))[3]. Thus, Plaintiff satisfies the second part of the *Sandin* standard, but, as I discuss below, the claim must still fail because he has not shown that his protected liberty interest was deprived without due process of law.

In the Court's summary judgment order, it found that Plaintiff adequately alleged that Defendants Guimond and Bartlett "deprived him of his liberty interest created by § 541.22(c) without due process of law." *Hollman*, 2009 WL 3112076, at *13. The Court issued this holding because Plaintiff "claims that he was confined for 13 and 97 days; that 'there had been no shots written, no hearing held, and no reason given' for his first detention; and that 'there was a [contrived] reason given (but still no shot [sic] and no hearing held) ...' for his second detention." *Id.* (quoting Plaintiff's September 25, 2008 opposition papers at 8). Here, neither the proposed amended complaint nor Plaintiff's motion papers make similar allegations against Rivera. He does not make a single argument that he was deprived of a hearing or that he requested one and he was denied a right to defend the charges. While the proposed third cause of action incorporates the factual allegations from the original complaint, the Court's holding was based on arguments provided in Plaintiff's motion papers, and not on the factual

---

[3] 28 C.F.R. § 541.22(c) appears to be amended by 28 C.F.R. § 541.26 (effective Jun. 20, 2011).

allegations of the original complaint. *See generally Weinstein v. Albright*, No. 00-CV-1193, 2000 WL 1154310, at *2 (S.D.N.Y. Aug. 14, 2000) (where a *pro se* litigant is involved, the Court may consider the allegations in the motion papers when deciding a 12(b)(6) motion). The proposed amended complaint focuses on his purported deprivation of liberties, but remains silent, as do Plaintiff's motion papers, on the sufficiency of process. *See Green v. McLaughlin*, No. 07-CV-0263, 2010 WL 2034437, at *3 (S.D.N.Y. May 21, 2010) (dismissing due process claim in part because the plaintiff did not allege that he was denied a hearing). Without pleading that his protected liberty interest was deprived without sufficient due process, Plaintiff's proposed third cause of action is futile because it fails to state a claim.

### ii.  Placement of False Report in Plaintiff's File

Plaintiff maintains that he has a protected liberty interest against Rivera falsely placing in his file that a SIS investigation revealed that he threatened another inmate. (P. Am. Compl. ¶ 39.) The argument is unsupported by his motion papers and by the allegations in his proposed amended complaint. It is well established that a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). The placement of a false report in Plaintiff's file is not, on its own, a due process violation. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). Rather, a constitutional violation occurs if the placement of the false report results in the deprivation of a protected liberty interest without due process of law. If Plaintiff was in fact deprived of a protected liberty interest, then he "does have a due process right to a hearing before he may

be deprived of a liberty interest on the basis of a misbehavior report." *See Boddie*, 105 F.3d at 862.

Plaintiff's complaints about his assignment to FCI Elkton and his denial of furloughs because Rivera falsely placed in his file that he threatened another inmate are not protected liberty interests. It is well settled that inmates have no protected liberty interest in being assigned to particular correctional facilities, even if one is "substantially less agreeable" than another or if the transfer "visit[s] a 'grievous loss' upon the inmate." *Pugliese v. Nelson*, 617 F.2d 916, 923 & n.6 (2d Cir. 1980) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *accord Taylor v. Levesque*, 246 F. App'x 772, 774 (2d Cir. 2007) (citations omitted) (summary order); *Prins v. Coughlin*, 76 F.3d 504, 507 (2d Cir. 1996) (citing *Meachum*, 427 U.S. at 225); *Tinsley v. Goord*, No. 05-CV-3921, 2006 WL 2707324, at *5 (S.D.N.Y. Sept. 20, 2006); *Gilmore v. Goord*, 415 F. Supp. 2d 220, 223 (W.D.N.Y. 2006) ("[T]ransfers from one facility to another generally do not implicate any protected liberty interest, even if the transfer involves a change in security classification as well.") (citing cases). Further, inmates have no protected liberty interest in assignments of a particular prison classification or eligibility for furloughs or other programs. *See Pugliese*, 617 F.2d 923 & n.6 (citations omitted); *accord Taylor*, 246 F. App'x at 774; *Green v. Armstrong*, 98-CV-3707, 1999 WL 642910, at *1 (2d Cir. Aug. 20, 1999) (not selected for publication) (citing *Moody v. Daggett*, 429 U.S. 78, 88 (1976)); *Mack*, 2002 WL 31845087, at *7.

Plaintiff relies on *Jones v. Couglin*, 45 F.3d 677, 679-680 (2d Cir. 1995), but the case is inapposite. There, an inmate brought a retaliation claim against prison officials. Indeed, a prisoner may have a substantive due process right against false misconduct charges as retaliation. *Id.* Here, the proposed amended complaint does not allege that Rivera himself

retaliated against Plaintiff by placing the report in his file because of Plaintiff's persistence regarding the RDAP program. In order to prevail on a retaliation claim, a plaintiff must show "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). There must be "a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quotation omitted). Courts must examine a prisoner's claim of retaliation with "skepticism and particular care," *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), because they are "'[p]rone to abuse' since prisoners can claim retaliation for every decision they dislike." *Graham*, 89 F.3d at 79 (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). The allegations show no causal connection between Plaintiff's efforts to enter into the RDAP program and Rivera's actions. Accordingly, Plaintiff's request to add a due process violation against Rivera should be denied as futile because he does not state a claim.

### C. Plaintiff's Proposed Eighth Amendment Claim as to S. Rivera in his Individual Capacity

Plaintiff's fourth cause of action alleges that Rivera violated his Eighth Amendment rights by continuing to place him in the SHU although the November 15 report allegedly exonerated Plaintiff and by failing to place in Plaintiff's file that the allegation that he had threatened another inmate had proved unfounded. (Pl. Am. Comp. ¶¶ 40-41.) This proposed cause of action should be dismissed because it is futile to plead the claim.

"To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test. First, the plaintiff must demonstrate that the conditions of his confinement result in unquestioned and

serious deprivations of basic human needs.  Second, the plaintiff must demonstrate that the defendants imposed those conditions with deliberate indifference."  *Welch v. Bartlett*, 125 Fed App'x 340 (2d Cir. 2005) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996)) (summary order).  "Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).  Deliberate indifference "entails something more than mere negligence."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  Instead, the prison official must "know of and disregard an excessive risk to inmate health or safety; the [prison] official must both be aware of facts from which the inference could be draw that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  The "deliberate indifference" element is equivalent to criminal law's reckless indifference standard.  *Id.* at 839–40.

Plaintiff's proposed claim fails because he does not show that detention in the SHU was a serious deprivation of a human need or that Rivera acted with deliberate indifference. Placement in the SHU, without further allegations, does not violate the Eighth Amendment. *See*, *e.g.*, *Branch v. Goord*, No. 05-CV-6495, 2006 WL 2807168, at *5 (S.D.N.Y. Sept. 28, 2006) (citing cases for the proposition that normal SHU conditions do not deny an inmate the minimal civilized measure of life's necessities); *accord Gulley v. Roach*, No. 02-CV-908S, 2004 WL 2331922, at *11 (W.D.N.Y. Oct. 15, 2004) (same).  He points to no allegations that Rivera was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and [that] he [] [drew] the inference …."  *Farmer*, 511 U.S. at 834; *see also Trammell v. Keane*, 338 F.3d 155, 163 (2d Cir. 2003) (reasoning that deliberate indifference in non-medical-

care cases must "account[] for . . . competing institutional concerns" such as "the safety of prison staff and other inmates"); *Abdur-Raheem v. Selsky*, No. 07-CV-6247L, 2011 WL 3235646, at *5 (W.D.N.Y. Jul. 27, 2011) (dismissing inmate's Eighth Amendment claim for failure to state a cause of action); *Thompson*, 2010 WL 1910293, at *6 n. 9 (finding no Eighth Amendment violation where plaintiff had failed to show SHU confinement was "totally without penological justification," "grossly disproportionate," or "involve[d] the unnecessary and wanton infliction of pain") (citations and internal quotation marks omitted); *Awan v. Lapin*, No. 09-CV-126, 2010 WL 963916, at *10 (E.D.N.Y. Mar. 17, 2010) (finding that officials had not acted with deliberate indifference by placing plaintiff in SHU confinement, where it was imposed because of prison safety).

Plaintiff's allegation that failing to place in his file that he was exonerated for the allegations fail for the same reasons. Further, there are no allegations even suggesting that Rivera's actions were persuaded by any cruel or otherwise impermissible motive. Moreover, his claim that the transfer to the FCI Elkton violates his Eighth Amendment rights is also futile because an inmate does not have an Eighth Amendment claim merely because he is transferred to a purportedly higher security prison. *See Calvert v. State of New York*, No. 02-CV-6194, 2009 WL 3078864, at *9-10 (W.D.N.Y. Sept. 24, 2009) (citing *McBride v. Hallenbeck*, 587 F.Supp. 490, 491 (S.D.N.Y. 1984)); *Tinsley*, 2006 WL 2707324, at *4; *Hutchinson v. West*, No. 04-CV-135, 2007 WL 541980, at *1 (W.D.N.Y. Feb. 15, 2007). By statute, BOP officials retain the right to designate where a federal prisoner will serve the sentence and the security level of the facility. 18 U.S.C. § 3621(b); *see Fournier v. Zickefoose*, 620 F. Supp. 2d 313, 318 (D. Conn. 2009). Plaintiff also does not allege that S. Rivera "knew of and disregarded" any risk to Plaintiff in

transferring him to a higher security facility or acted with deliberate indifference regarding his transfer.

Finally, Plaintiff's proposed allegations that his alleged change in custody classification and his failure to secure a furlough violated his Eighth Amendment rights are also futile because these claims do not constitute "objectively, sufficiently serious conduct" necessary to support the first prong of an Eighth Amendment violation. *See Green*, 1999 WL 642910, at *2; *Tinsley*, 2006 WL 2707324, at *4; *Calvert*, 2009 WL 3077764, at *9-10 (dismissing Eighth Amendment claim in part because the "[p]laintiff has not alleged or shown that such change in classification violated any statute, regulation, or rule."). Thus, even accepting the truth of Plaintiff's factual allegations, he has not made out either the objective or subjective prongs of an Eighth Amendment claim.

### V.    Qualified Immunity

Defendants argue that S. Rivera is protected by qualified immunity for any *Bivens* accusations. Qualified immunity is a threshold defense to federal employees sued under *Bivens*. *See GM Leasing Corp. v. United States*, 429 U.S. 338, 359 (1977). In assessing qualified immunity, courts look first to "'whether the facts establish a constitutional violation.'" *Nwaokocha*, 369 F. Supp. 2d at 369 (quoting *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004)). If so, courts inquire, "'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Nwaokocha*, 369 F. Supp. 2d at 369 (quoting *Sira*, 380 F.3d at 68-69). The Second Circuit has held that it is very difficult for such a defense to succeed at the pleading stage. *See McKenna v. Wright*, 386 F.3d 432, 436–37 (2d Cir. 2004). Should the Court reject my recommendations that Plaintiff's motion to amend should be

denied, "there are outstanding questions of fact in this record that prevent granting [S. Rivera] qualified immunity as a matter of law." *Hollman*, 2009 WL 3112076, at *16. Similar to Defendants Guimond and Bartlett, I respectfully recommend that the parties engage in limited discovery "tailored to the question of whether [S. Rivera's] acts or omissions are entitled to qualified immunity." *Id*.

**VI.    Conclusion**

For the reasons set forth above, I respectfully recommend that the Court deny Plaintiff's motion to amend the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 6 and 72 of the Fed. R. Civ. P., the parties shall have fourteen days from this date to file written objections to this Report and Recommendation on ECF. Extensions of time to file objections should be directed to Judge Garaufis. Failure to file timely objections will preclude appellate review of any order of judgment that will be entered.

**SO ORDERED**

**Dated: August 26, 2011**
        **Brooklyn, New York**

                                                    /s/ ALC
                                        _____
                                        **ANDREW L. CARTER, JR.**
                                        **UNITED STATES MAGISTRATE JUDGE**